Howry, J.,
delivered the opinion of the court:
The vessel was condemned by a prize court because the master had neither invoice, bill of lading, nor role d’equipage.
On the first hearing we allowed for the value of the vessel because the register and sea letter were on board.
Freight earnings were inadvertently omitted in the original report. No question arising respecting contraband, and the conduct of the neutral being fair and impartial, they are now reported.
*379 The value of the goods carried was denied because neutrality of the cargo did not seem to the court to be properly established. The correctness of the ruling on this question now arises on the motion of the parties for final consideration.
The claimants contend that the absence of the papers afforded only presumptive evidence of the existence of enemy interests, which were rebutted by the positive proof of the master and cook, and that the condemnation as to cargo was as illegal as condemnation of the vessel itself. The defendants contend, on the authority of Cushing v. Laird (107 U. S., 77), that under the law of nations the neutral ownership of the cargo depended upon the ship’s papers. The Supreme Court said in this case that “ The law of nations presumes and requires that in time of war every neutral vessel shall have on board papers showing her character, and shall also have officers and crew able to testify the facts establishing her neutrality.”
The enumeration of papers usually required to prove neutrality and which are expected to be found on board a vessel is: -(1) The passport; (.2) the sea letter; (3) proof of property; (4) muster roll; (5) charter party; (6) bill of lading; (7) invoices, etc. (1 Chitty’s Com. L., 487; 2 Baker’s Halleck’s Int. L., sec. 98.)
A learned commentator, quoting from Hiibner, says that a neutral is bound not only to submit to search but to have his vessel duly furnished with the genuine documents requisite to support her neutral character; that the want of some of these, the most material of which are the register, passport, sea letter, muster roll, log book, charter party, invoices, and bill of lading, is strong presumptive evidence against the ship’s neutrality; yet the want of any one of them is not absolutely conclusive. (1 Kent’s Com., * 157.) Lord Mansfield said, however, in Bernardi v. Motteux (Doug. Rep., 581) 5 that by the maritime law of all countries throwing papers overboard was considered as a strong presumption of enemy’s property, but he had never known a condemnation on that circumstance only. In theAmiable Nancy (3 Wheaton, 561) the Supreme Court said that it could not be admitted that the mere want of papers could afford a just cause of condemnation, although a circumstance of suspicion explained by the *380 preparatory examinations of the officers and’crew and by the fact of a voluntary arrival. Under the circumstances of that case confiscation was deemed injustice for the mere want of papers. And in The Pizarro (2 Wheaton, 245) it was held that parties would be at liberty to give explanations of their conduct and to make further proofs of their property, regardless of papers. The want of documents — such as a sea letter or passport — was held insufficient as a substantive ground for condemnation, but the capture was justified so as to send the ship into a proper port for adjudication. This was a case where there Avas an omission to comply with the requisites of a treaty.
The fundamental presumption Avhich obtains in cases ox seizure and condemnation arising under the act of January 20, 1885 (23 Stat. L., 283), is the legality of the proceeding. This presumption is subject to proof in rebuttal. Applying the rules of international laAV unmodified by the treaty of 1778 we are of opinion that the matter must be decided bjr the principles of good faith rather than from an omission which most probably originated in carelessness or negligence and certainly from causes free from fraud. It is settled that the presence of papers does not necessarily imply a fair case, because documents may be fabricated. So the absence of some of them does not furnish a conclusive groxind for condemnation. (Wheat, on Maritime Captures and Prizes, 65.)
"We know hoav from the subsequent protest of the master that the cargo of this vessel Avas neutral. The careful representative of the GoA'ermnent concedes this while properly contending that the proceedings resulting in condemnation must not be determined by subsequent developments, but by the proof in hand at the time. Neutrality was the thing to be proved to those rightfully charged with the privilege of considering the fate of the prize. But Avas neutrality proved ? The report of the capture shows that the vessel was seized because the clearance was in contravention of the laAvs and customs of France. The absence of papers was not suggested nor suspicion raised at the time in regard to the neutral character of the freight. The vessel Avas registered, but notwithstanding she showed her sea letter, the prize court condemned both Aressel and cargo on the same ground. The oral *381 testimony before the tribunal was direct that the proprietary interest was in citizens of the United States. While the question of going outside the papers is not free from doubt, we think, on the whole case, this oral testimony was competent and sufficient to exonerate the" cargo. This seems to us, upon reflection, to be more nearly in consonance with the rulés of international law and the reasons which underlie the action of nations in dealing with each other in time of war than a rule making papers the sole test.
We have dealt with the question at issue without reference to the expressions contained in some of the early decisions of this court under the act of "1885. In holding that evidence aliunde the ship’s papers established neutrality of the cargo we are in accord with these decisions as far as they are applicable and with the ■ apparent weight of authority on the subject.
The findings will be certified to Congress, together with a copy of this opinion.